Next case is Knight v. Rennegarbe. Mr. Terlesi again. Ready to proceed, counsel? Go ahead. Please support counsel. This case presents the question to the court. What is the immunity of a public employee under the Court of Immunity Act for the slander of a private citizen? The facts are fairly straightforward and simple. The plaintiff, Mr. Knight, was a nurse practitioner student through the program at SIUE in the fall of 2007. As part of that program, he was engaged in clinical practices at various local hospitals, including Salem Hospital. October of 2007, Salem has its Little Egypt Festival every year and the hospital happened to have a float. Dr. Rennegarbe, who was the president and CEO of the hospital, got some hearsay information after the parade. It turned out to be incorrect. It stated that Mr. Knight attended this parade but loudly booed the hospital float and that conduct was unprofessional and disrespectful. She then took that information she had, without contacting Mr. Knight or doing any further investigation, called up Dr. Douglas Combs, who was the plaintiff's sponsoring physician, told him that Mr. Knight's participation in this program at Salem Hospital was terminated, that he had attended this parade, that he had booed the hospital float, that he was unprofessional and disrespectful. She then called the director of the nursing program at SIUE, in fact, Mr. Knight's direct supervisor, and the director of the clinical practice program, both of whom were Ph.D.s in nursing, essentially repeated the same information to those persons that were in charge of his education, telling them the same information, that he was barred from participation in this program at Salem Hospital any further, that he had done this parade. All of these things which he, in fact, had not done, and that he was unprofessional and disrespectful. The plaintiff then filed suit against both Dr. Renegarby and the hospital, alleging various causes of action, both for the termination of his participation in the clinical program and an individual account against Dr. Renegarby for slander. Throughout the motion process, Mr. Wernzeman was certainly able to convince the trial court and myself also that the actions against the hospital were improper and that I would not be able to sustain a cause of action against the hospital under the Immunity Act, and also that the actions of Dr. Renegarby in termination, in her decision to terminate him from Mr. Knight, from the program, was not actionable as an exercise of discretion under 2201 of the Immunity Act. And I think ultimately those decisions were correct. Those decisions were not appealed. Therefore, the sole issue before this court is the one count against Dr. Renegarby personally for slander. And I think what the court needs to keep in mind is, of course, this case also comes up for hearing on the granting of a 619 motion. All the same rules apply. The complaint is taken as true. Moreover, the defense of the Court of Immunity Act is an affirmative defense. It is the defendant's burden. And we've cited numerous case law in our brief that the Immunity Act is strictly construed against the entity or the employee claiming its benefit. So that's the procedural framework upon which this case comes before the court right now. Essentially, what the trial court found, and what the appellee is asking this court to conclude, is that a public employee of this state has license to slander or lie to a private citizen so long as it remotely has anything to do with the public employee. Clearly, purely private conduct, if Mr. Knight and Mrs. Renegarby happened to be neighbors and she had slandered him over something to do with his dogs coming to her yard or something, clearly that would have nothing to do with her public employment. But as long as the subject of the slander has anything to do with the entity that the public employee works for, the public employee, according to, I think, appellee, is completely immunized from any suit for slander or lying. And I think that is incorrect. Surprisingly, it seems to be a dearth of case law that either one of us has found directly on this point. But I think what we have to look at here is the Immunity Act. They have pled their immunity under the discretionary function portion of the Immunity Act statute. And as I said, I think we ultimately conceded that even if her decision to terminate him was abusive because it was based on wrong information, based on a failure to conduct any kind of investigation, both the entity and her are immunized from that discretionary act of terminating him. Does the record show whether or not the university asked her why it was terminated? Would that make any difference? If she just said, so-and-so is terminated, and they said, well, why are you terminating your client? And then she repeated it. Would that make any difference to you? I think not. Because I think that would be a question of traditional slander law. And the question is, does that immunize me or the speaker in any other slander situation? Whether I volunteer a slander or whether you ask me, well, what do you think of Joe Smith? And I say, well, he's a convicted felon and he does this and he does that. I don't think that immunizes me from a slander suit whether the information is solicited or not. So I think that would be strictly a question that really wouldn't involve the interpretation of the Tort Immunity Act but just the slander act, the slander law. And I don't know why that would necessarily immunize somebody or be a defense under a defamation action. And this record does not show it. The complaint simply says that what it does show is that clearly the contact was initiated by Dr. Renegar, that she made the contact with Dr. Cohn. She made the contact with the persons that were running the nursing program at SIUE. And the complaint simply says that she told them this information. Now, if we ever get to the point of depositions, whether they asked or she simply volunteered it, she clearly told them that she was terminated from the program. She told them that he had done these acts that were unprofessional and disrespectful when in fact he had not. The briefs seem to focus on the question of was this within the scope of her duties as a public employee. And as we have cited, that's clearly a question of fact. The defendant argues that because we have alleged in our complaint that she was president and CEO at the time this action was taken, that that somehow means we're saying that was within the scope of her duties. It certainly does not. That was simply a factual allegation to set the context for what happened here. The second thing is the defendant argues that because she filed an affidavit that we needed what her duties were and we didn't file a counter affidavit saying, no, those aren't your duties, that that was an admission for 619 purposes that this was within the scope of those duties. But if you read that affidavit, as we pointed out, that, although her affidavit goes to generally what her duties were and then specifically to the issue of making the decision to terminate him. I think that's where perhaps the trial court lost its focus here is separating those two things. The two separate things here, the decision to terminate his participation in the program, which, even if abusively exercised, is probably correctly immunized, as opposed to the communication of false statement of facts concerning that decision to third parties. We have pointed out under the Immunity Act, in 2107, the statute specifically states that a public entity shall not be liable for any action of its employees that is libelous or slanderous. Now, clearly, the legislature would not have had to put that section in for actions that were outside the scope of the employee's duty. An employer is never liable for acts of an employee that are outside the scope of their duties. So this statute has to be specifically addressing the question of whether when a libel or slander is within the scope of the duties, is the entity still liable? And the legislature has specifically said, no, the entity is not liable when a public employee slanders or libels somebody. Again, as we argued to the trial court, that section of the statute very, very specifically does not include the employee, and I think it's reasonable to conclude that by definition the legislature reasonably determined that it cannot be within the scope of a public employee's duty to slander a private citizen, any more than the case that we both discussed in here, which involved a battery. By definition, a battery is not within the scope of a public employee's duties. In their brief, they cite at least two cases, Dola-Towski v. Life Printing and Harris v. New Sun. You didn't respond to them in your reply brief, and those involved policemen talking to a reporter, one of which the inference in the complaint was that she was a prostitute. She filed a complaint and denied it, said it was not factual. How do you distinguish Dola-Towski? Well, and I think that's exactly how, Judge, is that case is decided on the issue of was that a false statement of fact or just? Well, it's absolute immunity, so whether it was false or not didn't make any difference to the court. Right, the question is was it characterized? It seems to me that that case falls into those cases that go off on the opinion-fact dichotomy. Is it an opinion or is it an actionable statement, a misstatement of fact, or is it an opinion? Similar to the other case cited. So you're saying it's not slander because it's an opinion? In those cases that you believe that's the reason they decided it that way? That's how I read them, because I don't read those cases to say that a public employee has absolute immunity to make any false statement of fact they want about a private citizen. No case that I have come across specifically comes out that says that, and I think it would be a surprise to do so. I mean, you know, we've cited some extreme examples that you can think of in our brief, but in this particular case, like I said, if she would have just – let's say it had nothing to do with Craig. She just didn't like Mr. Knight for some personal reason, nothing to do with his abilities or anything else. She just had it in for him. She didn't like him. And she had called – she had done the exact same thing. And she had called up and said, this man is a drunk, he's an alcoholic, he's harming patients, he'll never make a nurse practitioner, he's not allowed to set foot in our hospital again. If this court affirms the decision of the trial court, this court is saying that that is non-actionable conduct on the part of any public employee, because there's no principled difference between – there's a difference in degree, there's a difference in intent and extremity, but none of that matters under the Tort of Immunity Act. It doesn't matter if it's intentional or willful or anything else. The grant of immunity is, as you pointed out, absolute. And so we're saying, by necessity, that would mean that that's exactly what a public employee has a right to do. If they're working within their duties or within their role. If it has anything whatsoever to do – like in the example I said, it had something to do with her employment. Again, if it's wholly private conduct, it has absolutely nothing to do with the public employment. I don't see how anybody could make the argument that just because somebody's a public employee they have a right to slander their grandmother or something, something that has nothing to do with their public employment. But I think there's a difference between having any relation to do with your employment and within the scope of your duties of that employment. For example, the case – I'm sorry, I've forgotten. To tell a school why you fired somebody is not within the scope of that dependent's employment, duties? I think to communicate a false statement is a fact. As I said, I mean, there is no distinction here in the case law between negligent or willful statements. So necessarily that would mean a public employee could fire somebody within their jurisdiction to fire and then communicate in willful, intentional, knowing false reasons why he did it. And I said anything you want to think of, the most horrific, awful things you want to say about a person, if they want to make those up on a whole cloth and say that's why I fired Joe Smith, they would be indignant in that. And certainly that doesn't strike one as common sense, and certainly I don't know how that could conceivably be characterized within the scope of a public employee's duties. I think certainly a public employee in that circumstance could say I terminated him for what we believe to be in the best interest of the hospital. I mean, clearly there's not any slander there. There's no statement of fact one way or another. They could certainly say truthful. She could have said I terminated him because I heard from a third party that I haven't checked with him, I haven't talked to anybody else, I have no idea whether it's true or not, but I heard that he was at this prairie and he proved to float. But that's not what this alleges. This alleges that she told them that he in fact did this, he in fact was an unprofessional, disrespectful person, who had no business being in the nurse practitioner program and in fact would not be in that program. You don't think the reason why he was terminated was within the scope and inference of her employment duties, of the defendant's employment duties? Again, precisely that is the question that is no longer before the Court. The reason why he was terminated is not here. Whether it's good reason, bad reason, abusively exercised or not, we have conceded that that decision was within the scope and is in the act. We're not suing for termination of his participation in the program. And just so we're absolutely clear, he was not an employee. He was not being paid. He was just a company physician, sponsoring physicians as part of his internship, clinical practice. You could analogize that to an employee. I think it's a good analogy, Your Honor. I think it's close. And that brings us to that very point, exactly what we said in the brief. If the trial court is correct, then any person with hiring and firing power in a public employment, with any bone of it, with any employee that she has the power to fire, can do so and communicate any false reason. She can take an ad in the newspaper, run an ad on the radio, anything she wants to say about that person. Let me ask you this. They filed an affidavit that you agree is unrebutted. That's correct. And in paragraph 7 of it, the defendant states, On October 6, 2007, I was informed by a hospital department director that she believed the plaintiff had booed the Salem Township Hospital personnel at the parade. That's correct. So are we to consider that? Or was the trial judge to properly consider that in deciding the 2-619 motion to dismiss? Certainly. I mean, we know she got that information. And, in fact, that's exactly right. It was by third-hand hearsay. She was told by somebody that that person thought or believed or heard from somebody else that he did this. Well, how do we know that? That it's third-hand hearsay if you didn't file a responsive affidavit? Well, basically, that's what her affidavit says. I wasn't there. She didn't say I was at the parade and I saw him boo and act disrespectfully. She says someone told me that they heard or they believed somehow. Okay. And then I think if we ever get to the trial and the facts of this case, the evidence will be that that was the extent of it. She never called Mr. Knight up. That is true or untrue. Never conducted any kind of investigation. Immediately repeated that information and terminated his participation in the clinical practice program. So I think this is somewhat similar to the case this morning. The appellee here is asking for a very bright line that says basically public employees have license to slander anybody about anything that remotely touches upon their employment. That's not what the Immunity Act says. In fact, the Immunity Act very, very specifically excluded employees from the immunity granted to entities for slander and libel. And I think if you want to follow the intent of the legislature, that is clear from that. That no such grant was intended. It's not specifically in the act and it's counterintuitive and against common sense. You cited the Valentino case, isn't that the one that Justice Quinn wrote? And the conclusion was the activity in that case was outside the scope of their employment. That's exactly right. Okay. So there's a key here whether it's inside the scope of their employment or outside the scope. Well, I think that is, Your Honor, and we have cited numerous cases that say that that is clearly a factual question that has to be decided at trial, whether actions were within the scope or outside the scope. And based on this affidavit that simply says I was the CEO and it was my job to hire and fire, that that doesn't definitively decide that question, and that's going to have to be up to the trier fact to decide any evidence, were the actions that she took based on the information she had, not with respect to the termination, but with respect to the communication of this false information, legitimately within the scope of her duties? And we think the answer ultimately would be no, but certainly that the trial court was not in a position to be able to decide that on a 619 motion. Mr. Warnsman, is that correct? It's not. I please the court counsel, Brian Warnsman, I represent the appellee, Rochelle Renegarby, for this matter. She is suspended in the underlying case. The plaintiff had made allegations about an account against Mrs. Renegarby, who is the president and CEO of Salem Township Hospital, alleging that she's liable for slander. This is a unique hospital. It is a township hospital, one of the few, if not the only one, remaining in the state of Illinois. And for that reason, Mrs. Renegarby is a public employee. And it's not disputed in this case that the hospital is a governmental entity and that Mrs. Renegarby is a public employee. The trial court dismissed this count, finding that Mrs. Renegarby was immune from liability under the Tort Immunity Act. We believe that that dismissal is proper. We believe it's proper because Mrs. Renegarby is entitled to immunity under the Act, specifically as a public employee under Section 2-201 of the Tort Immunity Act. We believe it's proper because the dismissal furthers the purpose of the Tort Immunity Act, which is to protect local public entities and their employees from liability arising from the operation of their government, decisions they make in the government, running their organizations, and to prevent the diversion of public funds for payment of claims, damage claims that may arise from those. We also believe that a dismissal here is proper because it furthers the purpose of 2-619 motions to dismiss, to afford a litigant the means to dispose of issues of law and easily prove sets of facts at the outset of a case. As Mr. Terlizzi had indicated, the immunity that we are claiming, that we're asserting here, is under 2-201, which is immunity in the determination of policy or the exercise of discretion. And that statute provides a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from that act, as long as the omission occurred in determining policy when acting in the exercise of discretion. And I think it's important, the last three words of that statute is, even though abuse, so even if that discretion is abused, this immunity applies. The following Supreme Court has held policy decisions are those decisions which require a public employee to essentially balance competing interests and make a judgment call as to what solution will best serve those interests. Discretionary decisions are essentially defined as those not performed on a given set of facts in a prescribed manner. So it's basically deciding in the public employee's discretion what's going to work best in that situation. And we believe that the pleadings and the affidavits filed in this fact clearly show that Ms. Renegar, whose position as the President and CEO, is a position involving the determination of policy, is a position involving the exercise of discretion. In summary, her affidavit is saying her duties include managing, directing, planning, coordinating all aspects of operation of the hospital. As her affidavit also states, the actions that she took in this instance in getting information from her department's head that she saw Mr. Knight, what she thought Mr. Knight doing at the parade, the actions in notifying the supporting doctors, notifying SIUE, we believe that all those issues show that she was acting in discretion in determining policy. And I think it's important to note that Mr. Terlizzi said that Ms. Renegar did not do anything to investigate, to contact Mr. Knight to determine what was true, what wasn't true. The hospital really didn't have a relationship with Mr. Knight. He was brought into the hospital by the doctors. He was working under his supporting doctor. It was coordinated through SIUE, so the supporting doctor and the college didn't have to get the hospital's approval. So in a situation like this, there wasn't really a mechanism for the hospital to go directly to Mr. Knight and verify this. As she did here, she balanced the best interest of the hospital. She considered the information her department head gave her regarding the alleged conduct of Mr. Knight at the parade. She made a judgment call that it was in the best interest of the hospital and its patients that somebody who is being disrespectful to the hospital shouldn't be allowed to be affiliated and do clinicals at the hospital. And we believe that all those issues clearly show that Rochelle Renegar was X. As a public employee under those circumstances, word determination of policy was an exercise of discretion and that she's immune from liability under the Tort Immunity Act. Mr. Terlizzi argued that in order for the defendant to be able to enjoy this immunity, the court has to find that the acts alleged were within the scope of Ms. Renegar's duties as president and CEO. And he states that the court shouldn't have found that because he didn't make an allegation to the complaint that they were within the scope. He essentially argues that's an issue of fact that should preclude a 6-2-19 dismissal. And I respectfully disagree with his position in that matter. We believe that a 6-19 is proper for the following reasons. At no time did the plaintiff make allegations in his complaint that the actions of Rochelle Renegar were outside the scope of her employment. Further, the pleadings and affidavits, I believe, clearly show that they were done within the scope of her job duties. Paragraph 2 of the complaint specifically alleges that at all times of material herein, Defendant Renegar was the president and CEO of the hospital. Paragraph 6 of the complaint, there's four subparagraphs, A through D. All of those allegations contained under that paragraph are detailing what the defendant's conduct was that the plaintiff felt was wrongful. And they were clearly done in performing her job duties. Specifically, three of those subparagraphs conclude with a statement that Rochelle Renegar told the doctors, the supporting and sponsoring doctors for SIUE that the plaintiff would no longer be allowed to participate in clinicals at the hospital. I struggle to see how her notifying them of that and her explanations for why can't be – I don't see any other reasonable inference other than all of that was done in conjunction with her duties as a doctor. Does the record show that she gave the explanation when she told him he was terminated? Or was it in response to an inquiry from the university as to why – would that make any difference? I don't think it would make a difference, but to answer your question, the record does not reflect whether she offered that information voluntarily or if the sponsoring doctor or SIUE asked that question. I don't think there's anything in the record at this point that addresses whether it was requested or not. I don't think it matters, Your Honor, because I believe that it's difficult for me to understand that informing them of the termination and giving an explanation whether solicited or not is outside – the explanation would be outside the scope of her appointment. So any reason that she would give would be protected in your position by the tort immunity? I believe under the 2-201 – As egregious – she could make up anything she wanted to, and that would be protected. As I read the case law in section 2-201 in the language at the end that says even if the discretion is abused, the safeguard is as long as it's a policy decision within her discretion and her job duties, that immunity applies. Additionally, Your Honor, the uncontested affidavit sets forth her duties and responsibilities, explains her reasons for making the decision to terminate and notify the sponsoring doctor and SIUE of her reasons for doing so. None of those allegations in the affidavit have been challenged. They weren't contradicted by the plaintiff's pleadings. No counteraffidavit was filed by the plaintiff. Under the Illinois case law, we believe that the facts alleged in that affidavit are being admitted. And with that being the case, we don't believe there are any facts in evidence to suggest that her conduct was not within the scope of her duties. They clearly were reasonably related to – The allegations in the affidavit clearly show that every step of the way, anything Ms. Renegar did in regard to this case was related to her job duties as the president and CEO. Mr. Terlizzi also briefly described to the court or argued that to uphold this type of dismissal would amount to essentially a judicial amendment of Section 2-107 of the Tort Immunity Act, which is the provision that provides that a public entity is not liable for any actions of its employees that are libelous or slanderous. However, we don't believe a dismissal as requested here amends that section. It merely applies the immunities of Section 2-201. A dismissal does not stand for the proposition that any slander committed by a public employee would qualify for immunity under the act as plaintiff has asserted. As I explained in answering your question earlier, Your Honor, the safeguards in place, the public employee's actions must still meet the qualifications under 2-201. It has to be a determination of policy. It has to be an exercise of discretion before immunity applies, which I believe is clearly the case here. Well, is it a part of her duties to give an explanation as to why the person is terminated? I think that that is. Or is it just in response to an inquiry? Well, why did you terminate her? I don't know that it would be a requirement that she did, but I think she has the discretion. If she feels that she needs to explain to this doctor, who obviously had privileges at her hospital, an SIUD who sends people there to do some of their coursework, I think she had discretion to decide, I'm going to explain to these people why I'm doing what I'm doing, terminating this participation with clinicians. And I think it's important that the case law… Well, it would be a better case if this was in response to the question, well, why was he terminated? I think it… You make that argument a little stronger, don't you? I think it puts the Rochelle Rettigarvey in a better light if it was… But none of that's at the record now. It's not at this point. Okay. I think LMI case law is clear that we can't read into the Tort Immunity Act exceptions that aren't there. The 2-201 clearly indicates that if they meet the qualifications of policy and discretion, that even if that discretion is abused, that immunity applies, and there's no exception for willful and wanton conduct. And I want to address the Dolotowsky and Harris case that Your Honors had requested or had asked Mr. Trulizzi about earlier. I believe those cases are directly on point here. In each of those cases, the plaintiff had alleged that, in the Dolotowsky case, he had alleged that a police officer had made slanderous statements regarding a woman who had been arrested for licitation. The plaintiff claims that her acts or that the officer's acts were not in his official capacity and the statements were not in the scope of his responsibilities. In that case, as we did in this case, the officer submitted an affidavit that communicated with the public as part of his duties. The only consideration there was whether the statements made were reasonably related to his duties. The court found that under that uncontested affidavit, even with plaintiff's claims that the statements were outside the scope, dismissal was proper. And the Harris case was similar. In that case, the court found that according to the uncontroverted affidavits, detectives' duties included speaking with the media. And as such, he was close with immunity for the statements he made within the scope of his official duties. So we believe those cases are directly on point with where we are here, Your Honor. And that would be all I would have unless the court has additional questions. All right, we would ask that the dismissal of the court uphold the dismissal of the trial court. Thank you for your time. Just briefly, Your Honors. Both the Dolatowsky and Harris cases are cited simply in defendant's brief simply for the proposition that a court can make a determination as a matter of law as the scope of duty issue based on an affidavit. And I think if she had filed an affidavit in here saying it is within the scope of my duties to communicate reasons for termination to third parties, and basically to state any reason I want, whether true or false, and we hadn't contested that, then perhaps these would be relevant cases. But these cases are not cited, nor do they stand for the proposition that a public employee has license to slander a private citizen. They're only to the issue of whether an affidavit is a sufficient basis to decide as a matter of law what's within the scope or what's outside of the scope. Turning to another issue, the only time a plaintiff ever alleges in a complaint whether a certain conduct is within or without, within the scope of duty of the defendant's employment, is if you're trying to assert responding in superior liability against the employer. We are not trying to do that under count one. Very specifically, we are not. And I don't know of any rule of pleading that says if you fail to plead a negative, the court on the 619 can assume that that negative is true. We simply plead that she was what she was, a CEO and the president of the hospital. Not what her duties were. We don't know what her duties were. She's filed an affidavit, and we don't dispute what she said what her duties were, but none of those duties go to the question that's before this court. And I can't get away from the issue of, as defendants themselves argue here, that the immunity under 2201 is absolute. It doesn't matter how willful, how malicious, how intentional. This court, to affirm that decision, would have to be saying a public employee has absolute license to willfully, maliciously, knowingly, and intentionally slander and malign any public employee under them with any falsehood that they can come up with in their imagination. Because that would be the necessary result of an opinion affirming this decision. As long as it's within the scope of the duty. As long as it's within the scope of the duty. Giving a reason why you terminate, is that normally within the scope of your duties? I think by definition, Your Honor, that giving a false reason, a false statement of fact about that, is not within the scope. Well, that wasn't exactly the case. Perhaps if she had said, I heard from a third source that this happened, that would have been a truthful statement. Thank you. Thank you gentlemen for your arguments and your briefs today. We'll take a minute of your advisement. We'll get back to you all shortly.